UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO LACY,<br>    Plaintiff<br><br>v.<br><br>WILLIAM J. FEENEY, KENNETH<br>HEARNS, JEAN ACLOQUE<br>and the CITY OF BOSTON,<br>    Defendants | )<br>) C.A No. 04-11492 REK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF MARIO LACY'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Now comes the plaintiff, Mario Lacy, in the above-captioned proceeding, and respectfully requests that this Honorable Court grant partial summary judgment in his favor as to all counts of his Complaint, insofar as these counts allege an illegal strip search. As grounds therefore, plaintiff states the following facts are undisputed with respect to the individual defendants: 1) plaintiff was strip searched; 2) he was not under arrest at the time of the search; 3) he was searched while in a public alley; 4) at least five officers were present during the search. Additionally, the following facts are undisputed with respect to Defendant City of Boston (hereinafter,"the City"): 1) none of the individual defendants understood or had been instructed that that Boston Police Department regulations do not permit strip searches, as defined in the regulations, unless conducted either with a warrant or inside the police station; 2) it was common practice to do strip searches outside of the police station at the time of the incident.

The plaintiff also relies upon and incorporates his Local Rule 56.1 Statement of Facts and Supporting Exhibits in support of his motion.

**STATEMENT OF THE CASE**

The plaintiff filed a complaint alleging that defendants conducted an unlawful strip search of his person in violation of 42 U.S.C. §1983 and M.G.L. c. 12, §11I.  The plaintiff also alleges that the City of Boston is liable for tolerating a custom of deliberate indifference to the rights of its citizens by failing to have a clear policy regarding strip searches outside of the station, and by not adequately training and supervising its officers on the proper procedures and methods for conducting strip searches.

Plaintiff incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 Statement of Facts.

**STANDARD OF REVIEW**

Summary judgment is inappropriate when the record reflects a genuine dispute as to a material fact. *See* Fed.R.Civ.P. 56(c).  A plaintiff is entitled to summary judgment when there are no issues of material fact with respect to each element of the cause of action and the record establishes that the plaintiff must prevail as a matter of law.  *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  The plaintiff must show that no reasonable trier of fact could find other than for the plaintiff because there are no genuine issues of material fact that could absolve the defendants of liability.  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *Chlorine Inst., Inc. v. Cal. Highway Patrol*, 29 F.3d 495, 496 (9th Cir. 1994).

**ARGUMENT**

I.  THE STRIP SEARCH OF PLAINTIFF IN A PUBLIC ALLEY, WHILE HE WAS NOT UNDER ARREST, AND IN THE PRESENCE OF AT LEAST FIVE POLICE OFFICERS VIOLATED PLAINTIFFS FOURTH AMENDMENT RIGHTS AS A MATTER OF LAW

It is undisputed that plaintiff was strip searched by defendant Hearns, in the presence of defendant Acloque, and that a search was ordered by defendant Feeney. (See Plaintiff's Statement of Facts at ¶¶ 4-6.) It is also undisputed that the search was conducted while plaintiff was not under a

Courts have viewed strip searches with great caution, and have recognized them as involving an extreme invasion of privacy. See *Bell v. Wolfish*, 441 U.S. 520 (1979)(correctional facilities practice [of visually inspecting underneath the genitals and the anal cavities of male inmates] "instinctively gives us the most pause"); see also *Mary Beth G. v. City of Chicago*, 723 F. 2d 1263 (7th Cir. 1983) (strip searches involving the visual inspection of the anal and genital areas are, "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission…").

The Supreme Court established the general Fourth Amendment standard for assessing the reasonableness that the search entails" (this standard is commonly referred to as "the *Bell* balancing test"*). Id.* However, nearly all of the cases where the *Bell* balancing test has been employed have considered strip searches that occurred *after arrest* and in the custodial/institutional context. In such custodial/institutional contexts, one factor weighed heavily by courts is institutional security:

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of

3

>freedoms of an unincarcerated individual. […] [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.

*Id*. at 545-46 (internal citations omitted); see also *Blackburn v. Snow,* 771 F.2d 556 (1st Cir. 1985)(pre-trial detainees – searches after contact visits); *Roberts v. Rhode Island,* 239 F.3d 107, 109-10 (1st Cir. 2001)(both convicted prisoners and pretrial detainees retain constitutional rights despite their incarceration, including basic Fourth Amendment rights against unreasonable searches and seizures); *Ford v. Suffolk County*, 154 F. Supp.2d 131, 140 (D.Mass. 2001)(summary judgment allowed in favor of plaintiffs where pre-arraignment arrestees strip searched by officials at county jail); *United States v. Cofield*, 391 F.3d 334 (1st Cir. 2004)(strip search conducted at precinct after arrest upheld).

In evaluating the reasonableness of the search the *Bell* Court held that, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." See *Bell*, 441 U.S. at 559. Clearly, here the plaintiff was not being held in a custodial/institutional setting; therefore, the institutional security justifications which diminish privacy rights in the majority of cases are neither present nor relevant.

Moreover, the place and manner of the search, which was conducted on the street, while plaintiff was not under arrest, with at least five officers nearby, demonstrated complete disregard for plaintiff's Fourth Amendment Rights. The overwhelming weight of authority suggests that a strip searches which are not conducted in private are unconstitutional -- to the extent that strip searches are *ever* permissible outside the custodial context, the government must show exigent circumstances, and that extreme care was taken to provide the most privacy available in that context. See *Burns v. Loranger*, 905 F.2d 233 (1990)(upholding strip search of

woman at residence based upon probable cause and exigent circumstances, based upon fact that officers had observed commission of felony in police presence and in plaintiff's presence, and where plaintiff had made repeated requests to use the restroom); see also *New Jersey v. T.L.O*, 469 U.S. 325, 382 n. 25 (1985) ("to the extent that deeply intrusive searches are ever reasonable outside the custodial context, it must only be to prevent imminent and serious harm.")

     Here, the police believed they had probable cause to search plaintiff. (See Plaintiff's Statement of Facts at ¶ 2.) Therefore, they could have arrested him and brought him to the station. Once there they would have had the opportunity to strip search him, if they believed they had reasonable suspicion that he had drugs or contraband on his person. *Swain v. Spinney*, 117 F.3d 1 (1st Cir. 1997). Even a custodial search, conducted in the privacy of a police station, can raise serious Fourth Amendment concerns; however, such a search is less likely to run afoul of the Fourth Amendment. See *Commonwealth v. Thomas,* 429 Mass. 403, 409, n.5 (1999)("[t]o preserve the privacy of the person being searched to the utmost extent, police should conduct strip and visual body cavity searches in private rooms whenever possible […] the searches should always be done where no one, other than the investigating officer or officers, can see the person being searched." ) Here, the defendants did not even bother to take plaintiff to a police vehicle or other indoor location, but pulled open his clothing and looked down his pants right in the street. (See Plaintiff's Statement of Facts at ¶¶ 4-6.)[1] It is unimaginable that such absolute disregard for individual privacy or dignity is sanctioned by the Fourth Amendment.

---

[1] The officers flagrant disregard of their own department regulations requiring that a strip search be documented in a police report underscores the inference that their primary concern was simply finding contraband, without balancing this objective against professional obligations or legal constraints. (See Plaintiff's Statement of Facts at ¶ 7, 9.) A likely explanation for why the search was conducted in the street is that, as alleged by plaintiff, officers conducted a body cavity search. (See Plaintiff's Statement of Facts at ¶ 13.) Such a search would not be permissible in the street or in the station. (See Plaintiff's Statement of Facts at ¶ 12.) Plastic evidence bags were found at the scene which defendants claim were used to conduct the strip search. A testing of the bags by a laboratory in California revealed feces on the bags. (See Plaintiff's Statement of Facts at ¶ 11.)

II. **THE SEARCH AND STRIP SEARCH OF PLAINTIFF VIOLATED PLAINTIFF'S STATE CONSTITUTIONAL RIGHTS UNDER M.G.L. C. 12 §11I AS A MATTER OF LAW**

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act "MCRA" and §1983 are parallel statutes, coextensive with each other.  See *Batchelder v. Allied Stores Corp*, 393 Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (1st Cir. 1996).  Accordingly, the arguments in Section I, *supra*, with respect to plaintiff's claims brought pursuant to §1983, apply with equal force to plaintiff's claims pursuant to the MCRA.  Therefore, summary judgment is certainly appropriate on his claims brought under the MCRA.

III. **THERE IS NO MATERIAL DISPUTE THAT THE CITY OF BOSTON DEMONSTRATED DELIBERATE INDIFFERENCE TO THE RIGHTS OF PLAINTIFF**

Plaintiff has alleged that the City of Boston (hereinafter, "the City") demonstrated a custom and policy of deliberate indifference to the rights of its citizens.  More specifically, the evidence shows that the City tolerated a custom of deliberate indifference to the rights of its citizens by: 1) failing to enforce the regulations forbidding strip searches outside the station and requiring that each strip search be documented in a report ; 2) having an affirmative custom of effecting illegal strip searches during drug investigations; 3) not adequately training and supervising its officers regarding the proper procedures and methods for conducting strip searches.

When a municipal policy is the cause of unconstitutional action taken by municipal employees, the municipality itself is liable.  See generally *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).  Where a single instance of conduct is an expression of an existing policy or municipal custom, liability rests with the municipality.  See e.g., *Ruvalcaba v. Los Angeles*, 167

6

F.3d 514 (9th Cir. 1999) (plaintiff's evidence was sufficient to raise issue of fact as to connection between City's dog bite policy and officer's striking and kicking plaintiff).

    **i.)    There is no material dispute that the City had an affirmative custom of executing illegal strip searches**

Where plaintiff has demonstrated that the existence of a widespread practice is so well-settled as to constitute a custom or usage with the force of law, liability should be imposed whether or not official policy makers had actual knowledge of the practice. See, e.g., *Thompson v. Los Angeles*, 885 F.2d 1439 (9th Cir. 1989). The custom in question is attributed to the municipality when the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the governing body [or policy maker with responsibility for oversight and supervision] that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Here, there is ample evidence of unconstitutional practices of which the City was or should have been aware. When the individual officers illegally strip searched plaintiff, they did so in accordance with the affirmative custom within the Department at the time. Defendant Feeney, a supervisor, testified that, at the time of the incident, strip searches were conducted from time to time outside of the police station. (See Plaintiff's Statement of Facts at ¶ 10.) Defendant Feeney testified that he personally had been involved in such searches on several occasions. (*Id.*) In another matter where Defendant Feeney was the supervisor, he was disciplined for failing to document a strip search that occurred under his supervision during the execution of a search warrant. (*Id.*) Defendant Hearns had conducted such searches, "maybe three or four times." (*Id.*) These searches were conducted without either acknowledging or understanding the professional or constitutional limitations placed on such searches. (*Id.* at ¶ 8.)

7

Such testimony suggests that this incident was not an aberration, but both pursuant to and consistent with Department custom at the time. Moreover, while the City did have a relatively clear policy with respect to strip searches in the *station*, the policy is very ambiguous as to whether strip searches are *ever* permitted where there is no arrest in the non-custodial context. Additionally, if such searches are ever permitted, the regulation is also very ambiguous with respect to *how* such searches are to be conducted. (See *Ex. C*, BPD Policy 318D). The affirmative custom of conducting strip searches, along with the highly confusing policy regarding such searches, demonstrates that the City's conduct was a significant moving force behind the constitutional violation.

  **ii.)** **There is no material dispute that the City failed to adequately train and supervise its officers.**

The City was deliberately indifferent to the rights of its citizens in failing to train and its officers with respect to the proper procedures and methods for strip searching individuals. A failure to train may rise to the level of a policy or custom when it evidences deliberate indifference to the rights of citizens. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

The Court in *City of Canton* stated that a determination of a city's liability for a failure to train must focus on the adequacy of the training program in relation to the specific tasks the officers must perform. *Id*. at 390. The Court used as an example a situation where police officers must carry firearms while chasing fleeing felons. Because constitutional limitations on the use of deadly force in such a situation are "so obvious," if the municipality provided no training to its officers in the proper use of firearms during such chases, this failure could show the requisite deliberate indifference to establish liability. *Id*., citing *Tennessee* v. *Garner*, 471 U.S. 1 (1985).

Because the City must know that its officers will be doing strip searches, this situation is analogous to the example used in *City of Canton*. There was a marked lack of clarity within the Department as to when, where, and how strip searches are to be conducted. (See Plaintiff's Statement of Facts at ¶ 7,8.) However, as suggested above, there was a well-settled custom of strip searching individuals in a wide variety of circumstances. Despite this well-settled custom, the record does not suggest that officers were provided with any clear training regarding strip searches, or on the policy governing strip searches. (See generally, Plaintiff's Statement of Facts.)

Like the constitutional limitations on the use of deadly force used as an example by the Court in *City of Canton*, 489 U.S. at 390, the constitutional implications of conducting searches and strip searches absent legal justification are "so obvious" that the City has been deliberately indifferent to the constitutional rights of its citizens by failing to provide adequate instruction to its officers with respect to these issues.

Additionally, a failure to supervise or monitor officers who are engaging in violations which the City knew or should have known were occurring amounts to acquiescence in the unconstitutional conduct. See *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 511 (7 Cir. 1993) (A municipal custom may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice)*; Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir. 1992)(plaintiff may establish municipality's liability by demonstrating that the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers."); *Britton v. Maloney*, 901 F. Supp. 444, 450 (D. Mass. 1995) ("Unlike a policy which comes into existence because of the top-down-affirmative decision of a policymaker, a custom develops from the bottom-up. Thus, the liability

of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance of or acquiescence in it.")

Here, as previously discussed, defendant officers conducted constitutionally prohibited strip searches in this instance and in a variety of past instances.  The City knew or should have known of this practice, and their failure to supervise and intervene in such conduct allowed the constitutional violations such as that experienced by plaintiff to occur.   Accordingly, plaintiff is entitled to judgment as a matter of law.

## CONCLUSION

There are no issues of material fact with respect to each element of plaintiff's claims under all counts of his complaint, and the record establishes that the plaintiff must prevail as a matter of law.  For all of the foregoing reasons, the plaintiff requests that this court allow plaintiff's motion for summary judgment.

>
> Respectfully Submitted,
> The Plaintiff Mario Lacy,
> By his attorneys,
>
>
> //S//Jessica D Hedges
> Stephen Hrones (BBO No. 242860)
> Jessica D Hedges (BBO No. 645847)
> Michael Tumposky (BBO No. 660618)
> HRONES GARRITY & HEDGES LLP
> Lewis Wharf–Bay 232
> Boston, MA 02110-3927
> T) 617/227-4019

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Jessica Hedges, hereby certify that, on Februrary 22, 2006, I spoke with James Chernetsky counsel to the City of Boston, and informed her of my intent to file this Motion.

> //S//Jessica D Hedges
> Jessica Hedges

## CERTIFICATE OF SERVICE

    I, Jessica D Hedges, hereby certify that on this 23rd day of February 2006, I served one true and correct copy of the foregoing PLAINTIFF MARIO LACY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW, where unable to do so electronically, by United States First-Class Mail, postage prepaid, as follows: Karen Glasgow, Asst Corp Counsl, City of Boston Law Dept, City Hall, Rm 615, Boston, MA 02201.

                                                                            //S//Jessica D Hedges
                                                                            Jessica D Hedges