UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO LACY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM J. FEENEY, KENNETH )<br>HEARNS, JEAN MOSES )<br>ACLOQUE, )<br>and the CITY OF BOSTON, )<br>    Defendants. )<br>) | C.A No. 04-11492-REK |

## PLAINTIFF'S REQUEST FOR INSTRUCTIONS TO THE JURY

The plaintiff submits the following as his proposed jury instructions:

1.   **42 U.S.C. § 1983 – Civil Rights Act.**   The plaintiff has filed this action, in part, under a provision of the United States Code, Title 42, section 1983, which gives a person the right to bring a lawsuit, and seek redress by way of money damages, for a violation of a constitutional right by a police officer acting in an official capacity.  In order to prevail on this claim, the plaintiff must prove two things:
   1) that the defendants acted under color of state law; and
   2) that the defendants deprived the plaintiff of one or more constitutional rights.[1]
State law provides a similar remedy.

2.   **Color of Law.** "Acting under color of law" simply means acting in one's capacity as a police officer.  There is no dispute that the defendants in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

3.   **No Specific Intent Required.**   It is not necessary in a case like this to find that the defendants had any specific intent to deprive the plaintiff of his constitutional rights, or that they acted with malice or ill will in order to find for the plaintiff.  The plaintiff is entitled to relief if a defendant acted in a manner which then resulted in a violation of his constitutional rights.  Whether any of the officers acted with subjective good faith is irrelevant.[2]

---

[1] 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635 (1980); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Monroe v. Pape*, 365 U.S. 167 (1961).
[2] *Monroe*, 365 U.S. at 16; *Hudson v. New York City*, 271 F.3d 62 (2d Cir. 2001) (reversing judgment for defendants where court instructed jury that an intentional violation of constitutional rights was required).

1

4. **Fourth Amendment.** The plaintiff claims that the defendants violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment reads:
> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Every person has the constitutional right to be free from unreasonable search and/or seizure of his or her person by law enforcements agents. You must determine whether any searches which you find to have taken place were reasonable under constitutional standards.

You should also take into account all of the facts and circumstances which were known, or should have been known, to the defendants when you are assessing their liability to the plaintiff. The question you must answer is whether in the face of such facts and circumstances a given defendant treated the plaintiff unreasonably and violated his or her constitutional rights, which shall be defined for you.[3]

5. **Fourth Amendment – Reasonableness.** Citizens of the United States are protected against the use of excessive force by the Fourth Amendment of the Constitution. The reasonableness of a particular use of force depends not only on when it is made but also on how it is carried out. That use of force must be judged from the perspective of a reasonable officer on the scene. The question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the underlying intent or motivation of the officer.[4]

6. **Strip Search – Definition.** Throughout this next set of instructions, I will use the term "strip search." By "strip search" I mean to include any removal or rearrangement of clothing which results in "any exposure or observation of a portion of a person's body where that person has a 'reasonable expectation of privacy.'"[5]

7. **Strip Search – Reasonableness.** The Fourth Amendment to our Constitution requires that all searches be reasonable. What is reasonable depends both on all the circumstances surrounding the search, and on the nature of the search itself. The permissibility of the search must be judged by balancing the level of intrusion on the individual's privacy interests against the search's promotion of legitimate government interests. In determining whether the search in this case was reasonable under the Fourth Amendment, you must determine how intrusive was the search that occurred, and weigh whether the evidence was substantial and serious enough to justify it. You must consider the nature of the invasion of the person's Fourth Amendment rights in determining

---

[3] *Roberts v. Hollocher,* 664 F.2d 200 (8th Cir. 1981).
[4] *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 47-48 (1st Cir. 2005).
[5] *Doe v. Calumet City*, 754 F. Supp. 1211, 1215 (N.D. Ill 1990), quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

whether the justification asserted by the officers was reasonable for that particular search.[6]

Specifically, in determining the reasonableness of a strip search you must consider the following four factors: 1) the scope of the intrusion; 2) the manner in which it was conducted; 3) the justification for the search; 4) and the place in which it is conducted.[7]

8.  **Strip Search – Level of Suspicion Required.**  Police officers are permitted to make strip searches only when they have reasonable suspicion to believe that the person they are searching is carrying contraband in the specific place to be searched.[8] A strip search cannot be justified by a general belief that the person is drug dealing.  To justify a strip search, the officers must have reasonable suspicion that the person is concealing drugs underneath his or her clothing.[9]  The Supreme Court has defined "reasonable suspicion" as a reasonable belief based on "specific and articulable facts," rather than a mere inchoate and unparticularized suspicion or hunch.[10]

9.  **Body Cavity Search.**  Because a body cavity search is even more invasive than a strip search, a greater level of suspicion is required to conduct this kind of a search.  Body cavity searches require probable cause, and must be conducted pursuant to a warrant.[11]  Where there are no exigent circumstances present, the severity of the personal intrusion manifested by body cavity searches requires that they be conducted by a doctor in a private and hygienic setting and in a medically approved manner.[12]

10.  **Requirements for Intrusive Search.**  The Fourth Amendment requires that searches be conducted in a reasonable manner, giving protection to the privacy rights of the person searched.  This requires consideration of the way in which any search is conducted and the nature of the place where it is done.  For instance, consideration must be given to whether a search on the street is more intrusive than a search in the privacy of a police station.

Intrusive searches must be designed to minimize emotional and physical trauma.  Strip searches must be conducted in the most private conditions possible.  An intrusive search must be done in a sanitary and medically approved manner.  You must determine whether in this case reasonable steps were taken in this respect.[13]

---

[6] See *Bell v. Wolfish*, 441 U.S. 529, 558 (1979).
[7] *Balckburn v. Snow,* 771 F.2d at 565 (1985).
[8] *Swain v. Spinney*, 117 F.3d 1 (1st Cir. 1997).
[9] *Id.*
[10] *United States v. Giannetta*, 909 F.2d 571, 576 (1st Cir. 1990).
[11] *Rodriques v. Furtado,* 950 F.2d 805, 811 (1st Cir. 1991) ("The First Circuit has expressed its revulsion for body cavity searches not supported by probable cause.")
[12] *Id.*
[13] See *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) ("Police conduct that would be impractical or unreasonable – or embarrassingly intrusive – on the street can more readily – and privately – be performed at the station.")

11. **Place of Intrusive Search – Exigency.** To the extent that deeply intrusive searches are ever reasonable outside the custodial context, it must only be to prevent imminent and serious harm. [14]

To conduct an involuntary strip search or body cavity search of a person who is not in a custodial setting, such as a jail or detention facility, "requires both probable cause and especially exigent circumstances." By exigent circumstances, we mean an imminent threat to the safety or the lives of the police officers or others, or a substantial likelihood that evidence will be destroyed, which would not permit the officers to postpone the search or move the person to another location to do the search. In determining whether the risk of evidence destruction creates especially exigent circumstances, you must take into account what means were available to the officers other than conducting an immediate strip search. The officers are required to use the least intrusive means reasonably available, and you should not find that exigent circumstances existed if other means for preserving evidence were reasonably available. [15]

12. **Credibility of Witnesses.** There was quite a bit of testimony from different police officers in this case. The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and you should weigh and balance it just as carefully as you would the testimony of any other witness. You should not give either greater or lesser credence to the testimony of a witness merely because he is a law enforcement officer. [16]

13. **Bias of Officials as Witnesses.** Several of the witnesses are still employed by the City of Boston and hence are interested witnesses in the outcome of this case. Their relationship with and employment by the City of Boston are matters for you to consider, together with your observation of the witnesses and the testimony you have heard, in determining whether they are biased in favor of the defendants, and what weight you will give to their testimony.

14. **Massachusetts Civil Rights Act.** The plaintiff has prevailed on a Massachusetts Civil Rights Act claim when he shows, by a preponderance of the evidence, that his civil rights were violated by threats, intimidation, or coercion. The Massachusetts Civil Rights Act is co-extensive with §1983. [17] Therefore, if you find for the plaintiff on a Fourth Amendment claim then you must also find for him on his Massachusetts Civil Rights Act claim.

---

[14] *New Jersey v. T.L.O.,* 469 U.S. 325, 341-42, 382 n. 25 (1985); *Burns v. Loranger*, 907 F.2d 233 (1st Cir. 1990) (upholding strip search of woman at a residence based on probable cause and exigent circumstances due to her repeated requests to use the bathroom).
[15] See *Timberlake by Timberlake v. Benton*, 786 F. Supp. 676, 691-92 (M.D. Tenn. 1992).
[16] *Roberts v. Hollocher*, 664 F.2d at 200; *Darbin v. Nourse*, 664 F.2d 1109 (9th Cir. 1981); *Bush v. United States*, 375 F.2d 602, 605 (D.C. Cir. 1967).
[17] See *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (D. Mass 1996).

15.     **Municipal Liability – Generally.**  The City of Boston is a defendant in this case, and is liable for violations of the constitutional rights of the plaintiff if violations were caused by policies or customs of the City which demonstrated a deliberate indifference to the rights of people in the plaintiff's position.  The City is not liable for each act committed by their employees, but is liable for those acts which are take pursuant to, or caused by, the City's policies or customs.

It is not required that a policy be officially adopted by the City's lawmakers for the City to be held liable.  A policy can be set by those to whom the responsibility for developing the City's policy in the area in question has been delegated.  Moreover, if there is persistent and widespread practice which has gained the force of custom, which practice was known to, or should have been known to, the appropriate policymakers of the City, and which was tolerated by those policymakers, the City will be liable for acts taken pursuant to that custom.

If you find that any of the individual defendants violated the plaintiff's rights under the Fourth Amendment, and that the violation was caused by, or committed pursuant to, a policy or custom of the City of Boston, and that the City demonstrated deliberate indifference to the rights of the people in the plaintiff's position, you should find the City liable for those violations.[18]

16.     **Municipal Liability – Deliberate Indifference**.  In order to find the City liable for a violation of the plaintiff's rights, you must find that the city demonstrated deliberate indifference to the rights of persons in the position of the plaintiff.  "Deliberate indifference" means that the policy makers of the city took actions, failed to take action, or were responsible for policies or customs, with a conscious disregard for the consequences of those actions or policies or customs.  You may find conscious disregard of all the consequences when the City proceeded to take action, to fail to take action, or to adopt or to continue policies or customs, despite the fact that a meaningful risk existed that a constitutional violation would occur, and that risk was either actually known to the policy makers of the city, or was objectively obvious and they should have known of the risk.[19]  Here the plaintiff alleges that the City is liable for tolerating a custom of deliberate indifference to the rights of its citizens by tolerating a custom of illegal strip and anal cavity searches during drug investigations.

17.     **Municipal Liability – Acquiescence in Unwritten Policy or Custom.**  Liability against a municipality may be based upon the existence of a custom "found in 'persistent and widespread ... practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well settled as to [have] the force of law.'"[20]

---

[18] *Monell,*, 436 U.S. at 658; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Bordano v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) (policy of breaking down doors without warrant to apprehend felons); *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986) (strip search policy); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1984) (same).

[19] *See generally Monell,* 436 U.S. at 658.

[20] *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987), quoting *Monell*, 436 U.S.at 690-91, citing and quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).

You may find that such a custom existed if there was a practice so well-settled and widespread that the policymaking officials of the City either knew of it, or should have known of it. You may find that the policymaking officials of the City should have known of practices of officers of the City because they were so "widespread or flagrant that in the proper exercise of [their] official responsibilities the [municipal policymakers] should have known of them."[21] By failing to address these customs you may find that the City acquiesced in these customs and thereby allowed them to occur.

18. **Municipal Liability – Failure to Have a Clear Policy and/or Failure to Train (as to strip search).** A municipality may be held liable for constitutional violations by its employees when the violations are caused by deliberate indifference on the part of the municipality to the need to provide training and guidance to its employees. Liability for the failure to have a written policy or failure to provide training with respect to a given area of law enforcement may be imposed where, "in light of the duties assigned to specific officers or employees the need for [a written policy] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need."[22]

In determining whether there was an obvious need for a written policy and/or training with respect to strip searches and/or anal cavity searches, you may consider, among other factors, the extent to which police officers of the city were engaged in enforcement of the narcotics laws, whether officers were frequently called upon to perform searches, whether officers frequently had to determine whether or not to engage in strip searches, and whether failure to train the officers about these matters would result in a probability that constitutional violations would result.[23]

Having no policy may in itself be a policy, and such a policy may be an unconstitutional policy. "[A] failure to set policy governing such a highly intrusive police action can render a City's actions as culpable as if they had a policy permitting unreasonable searches themselves. A local governing body does not shield itself from liability by acting through omission. Thus, when a city provides no guidance to its officers regarding such intrusive actions as strip searches, it [may have to] face the consequences of its inaction by being subject to suit."[24]

---

[21] *Bordanaro,* 871 F.2d at 1157, quoting *Spell,* 824 F.2d at 1387.
[22] Adapting failure to train language of *City of Canton v. Harris*, 489 U.S. 378 (1989), to failure to have a written policy.
[23] *Doe v. Calumet City*, 754 F. Supp. 1211, 1223-24 (N.D. Ill. 1990).
[24] *Timberlake by Timberlake*, 786 F. Supp. at 696; *Doe v. Calumet City*, 754 F. Supp. 1211, 1224 (N.D. Ill. 1990).

19.     **Duty to Prevent Other Officers from Violating Rights.**  Police officers have an affirmative duty to enforce the law and preserve the peace.  This includes stopping other police officers from violating the law.  A police officer may not ignore the duty imposed by his office and fail to stop other officers who illegally punish a third person in his presence.  Thus, if you find that one of the defendant police officers unlawfully conducted an overly intrusive strip search on the plaintiff, and that another defendant officer did nothing to prevent it, you may hold the second defendant police officer liable as well.[25]

20.     **Liability of Specific Defendants – Joint Tortfeasors.**  In this case there are multiple individual defendants and you must determine whether any or all of them are liable to the plaintiff.  In this connection, you should determine whether the officers acted jointly with and/or assisted each other.  Where two or more persons act together and cause a wrong to another, they incur joint liability for the acts of each other.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, the law permits the injured party to treat all the people involved in causing the injury jointly, and all are jointly liable to the plaintiff for the total sum of damages.   Under the law, all those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary and all that is required is that there should be a common design or understanding, even if it tacit one.[26]

21.     **Compensatory Damages.**    The fact that the plaintiff's rights are found to have been violated in and of itself entitles him to actual damages.  Therefore, if you decide for the plaintiff on the issue of liability, you must then fix the amount of money damages that will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants was a substantial factor in bringing about.
   Among the elements of injury and harm which you should consider are:
   a.    Any physical harm to the plaintiff during and after the incident, including ill health, physical pain, disability, or discomfort.
   b.    Any emotional and mental harm to the plaintiff during and after the incident, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish that plaintiff will, with reasonable certainty, suffer in the future.

22.     **Punitive Damages.**    You must also decide whether the plaintiff is entitled to the award of any punitive damages.  The function of punitive damages is to punish the defendants for malicious conduct and to deter similar conduct by others.  Whether you decide to award any punitive damages should be based on whether you find that the defendants acted willfully, deliberately, maliciously, or with reckless disregard for the plaintiff's constitutional rights.  If you find that they have done one of those things, then you should award punitive damages.

---

[25] *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982); *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1996).
[26] See *Wilson v. Town of Mendon*, 294 F.3d 1(1st Cir. 2002) (recognizing legitimacy of joint tortfeasor liability under § 1983.)

7

Punitive damages may be awarded even if the violation of plaintiff's rights resulted in only nominal compensatory damages. That is, even if the plaintiff can show no damages or other injury as a result of the defendants' actions, if these actions were deliberate, willful, or made with reckless disregard for plaintiff's rights, punitive damages are appropriate.[27]

23.     **Interest – 42 U.S.C. § 1983.** If you have determined that compensatory damages should be awarded to the plaintiff, you must also decide whether to award interest. This lawsuit was begun years ago, and you may award interest from that time to the present on the sum which you have decided is an appropriate compensatory damage award. Whether you do award interest should depend upon whether you conclude that interest is necessary to compensate the plaintiff fully for any injury suffered, bearing in mind that the plaintiff have not had the use of the damages you award during the time this litigation has been pending.

If you do award interest, the actual sum will be computed by the clerk at the rate provided by the law.[28]

Respectfully Submitted
Mario Lacy
By his attorneys,

//s// Jessica D. Hedges
Stephen B. Hrones
BBO # 242860
Jessica D. Hedges
BBO # 645847
Hrones, Garrity & Hedges
Lewis Wharf – Bay 232
Boston, MA  02110-3927
(617) 227-4019

**CERTIFICATE OF SERVICE**

I, Jessica D. Hedges, hereby certify that, on this the 7th day of April, 2006, I have caused to be served a copy of this document, where unable to do so electronically, on all counsel of record in this matter.

//s// Jessica D. Hedges
Jessica D. Hedges

---

[27] *Smith v. Wade*, 461 U.S. 30 (1983); *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 234 (1970) (Brennan, J., concurring); *Cochetti v. Desmond*, 572 F.2d 102, 105-06 (3d Cir. 1978); *Guzman v. Western State Bank*, 540 F.2d 948, 953 (8th Cir. 1976); *Stolberg v. Bd. of Trustees*, 474 F.2d 485 (2d Cir. 1973); *Batista v. Weir*, 340 F.2d 74 (3d Cir. 1965).

[28] *Furtado v. Bishop*, 604 F.2d 80 (1st Cir. 1980).