UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO LACY, )<br>　　　Plaintiff, )<br> )<br>v. )<br> )<br>WILLIAM J. FEENEY, KENNETH )<br>HEARNS, JEAN MOSES )<br>ACLOQUE )<br>　　　Defendants. )<br> ) | C.A No. 04-11492-WGY |

**PLAINTIFF'S REQUEST FOR INSTRUCTIONS TO THE JURY**

　　　The plaintiff submits the following as his proposed jury instructions:

**42 U.S.C. § 1983 – Civil Rights Act.** The plaintiff has filed this action, in part, under a provision of the United States Code, Title 42, section 1983, which gives a person the right to bring a lawsuit, and seek redress by way of money damages, for a violation of a constitutional right by a police officer acting in an official capacity. In order to prevail on this claim, the plaintiff must prove two things:
　　　1) that the defendants acted under color of state law; and
　　　2) that the defendants deprived the plaintiff of one or more constitutional rights.[1]
State law provides a similar remedy.

**Color of Law.** "Acting under color of law" simply means acting in one's capacity as a police officer. There is no dispute that the defendants in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

**Fourth Amendment-defined:** The plaintiff claims that the defendants violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment reads:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

　　　Every person has the constitutional right to be free from unreasonable search and/or seizure of his or her person by law enforcements agents. You must determine

---

[1] 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635 (1980); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Monroe v. Pape*, 365 U.S. 167 (1961).

1

whether any searches or seizures which you find to have taken place were reasonable under constitutional standards.

Here, the plaintiff alleges that the defendants violated his Fourth Amendment Rights in three ways: 1) by subjecting him to a strip search which was conducted in a constitutionally unreasonable place and manner; 2) by subjecting him to an body cavity search; 3) by using unreasonable force against him. I will now explain each of these in more detail.

I. *Strip Search*

*Strip Search – Definition.* Throughout this next set of instructions, I will use the term "strip search." By "strip search" I mean to include a visual inspection of any portion of a person's body where that person has a reasonable expectation of privacy, including any part of the buttocks, genitals, or anus.[2]
.
There is no dispute there was a strip search in this case as defendant Hearns admitted he pulled out the plaintiffs pants and underwear and observed his buttocks.

a. *Reasonableness*

The Fourth Amendment to our Constitution requires that all searches be reasonable, giving protection to the privacy rights of the person searched. What is reasonable depends both on all of the circumstances surrounding the search, and on the nature of the search itself.[3]

Here, the plaintiff does not challenge that the defendants had a basis to conduct a strip search of Mr. Lacy. Rather, they maintain that the <u>place</u> and <u>manner</u> of the search was constitutionally unreasonable. The place and manner of search are factors which you must consider in assessing the reasonableness of the search.[4]

> 1. *Place* - A detainee should only be strip searched in a location that allows the detainee the maximum amount of privacy, thus minimizing embarrassment, while still allowing the search to be conducted safely and efficiently.[5] For instance, the fact that the search was conducted in the street as opposed to the police station is a factor you can consider in evaluating the reasonableness of the search.[6]

---

[2] See *Wood v. Hancock County Sheriff's Dep't,* 345 F. 3d. 57, 63 -64 (1st Cir. 2003); See also *Doe v. Calumet City*, 754 F.Supp. 1211, 1216 n.9 (N.D. Ill. 1990).
[3] *Bell v. Wolfish*, 441 U.S. 520, 558-560 (1979).
[4] *Id*; See also *Amaechi v. West*, 237 F. 3d. 356 (4th Cir. 2001).
[5] See *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001).
[6] See *Starks v. City of Minneapolis*, 6 F.Supp.2d 1084 (D. Minn. 1998) (In ruling on the issue of qualified immunity for the searching officer, the court held that "a reasonable police officer would not be justified in assuming an on-street strip search was within the constitutional boundaries defined by the Fourth and Fourteenth Amendments of the United States Constitution." The court remarked that it was difficult to find case law explaining that a public strip search is inappropriate because the principle is so self-evident, such searches simply do not take place.)

2. *Manner* – You must also consider the manner in which the search was conducted, in other words how it was carried out. One of the factors you may consider is the number of police officers present.[7] You may also consider such factors as whether it was light outside, and whether the officers treated plaintiff in a professional or a degrading manner.

*II. Body Cavity Search*

A body cavity search is a type of intrusive search which includes some degree of touching or probing of body cavities.[8] Because a body cavity search is extremely invasive, body cavity searches require a high degree of probable cause that an individual is hiding drugs in his person, and must be conducted pursuant to a warrant.[9] The severity of the personal intrusion manifested by body cavity searches requires that they be conducted by a doctor in a private and hygienic setting and in a medically approved manner.[10] The parties agree that if there was a body cavity search under these circumstances under these circumstances it violated plaintiff's constitutional rights.

*III. Excessive Force*

Citizens of the United States are protected against the use of excessive force by the Fourth Amendment of the Constitution. The reasonableness of a particular use of force depends not only on when it is made but also on how it is carried out. That use of force must be judged from the perspective of a reasonable officer on the scene. The question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the underlying intent or motivation of the officer.[11]

**42 U.S.C. §1983 – Supervisory Liability**—There is no dispute that defendant Feeney was the supervisor at the scene in this case. Under §1983, supervisors are liable for a violation of the plaintiff's rights if their own conduct was the proximate cause of the violation.[12] A supervisor violates a plaintiff's constitutional rights if he:

1) Does an affirmative act or acts
2) Participates or acquiesces in another's affirmative act or acts[13], or

---

[7] A number of cases comment on the presence, or absence, of unnecessary personnel during a strip search. *See Hill v. Bogans,* 735 F.2d 391 (10th Cir. 1984); see also *Abshire v. Wells*, 830 F.2d 1277, 1280 (4th Cir. 1987).
[8] *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 63 (1st Cir. 2003)
[9] *Rodriques v. Furtado,* 950 F.2d 805, 811 (1st Cir. 1991) ("The First Circuit has expressed its revulsion for body cavity searches not supported by probable cause.")
[10] *Id.*
[11]*Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 47-48 (1st Cir. 2005).
[12] *Mackinney v. Nielsen*, 69 F.2d 1002, 1008 (9th Cir. 1995).
[13] *Baker v. Monroe Township*, 50 F.3d 1186, 1193-94 (3d Cir. 1995).

> 3) Fails to do something which he is required to do, and that act or omission causes the violation of which the plaintiff complains

Personal participation in the immediate act or acts which violated the plaintiff's rights is not required.[14] It is sufficient if the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, which he knows or reasonably should know would cause others to inflict the constitutional injury.

**Massachusetts Civil Rights Act.** The plaintiff has prevailed on a Massachusetts Civil Rights Act claim when he shows, by a preponderance of the evidence, that his civil rights were violated by threats, intimidation, or coercion. The Massachusetts Civil Rights Act is co-extensive with §1983.[15] Therefore, if you find for the plaintiff on a Fourth Amendment claim then you must also find for him on his Massachusetts Civil Rights Act claim.

**Credibility of Witnesses.** There was much testimony from different police officers in this case. The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and you should weigh and balance it just as carefully as you would the testimony of any other witness. You should not give either greater or lesser credence to the testimony of a witness merely because he is a law enforcement officer.[16]

**Bias of Officials as Witnesses.** Several of the witnesses are still employed by the City of Boston and hence are interested witnesses in the outcome of this case. Their relationship with and employment by the City of Boston are matters for you to consider, together with your observation of the witnesses and the testimony you have heard, in determining whether they are biased in favor of the defendants, and what weight you will give to their testimony.

**Proximate Cause-**Plaintiff must prove that the defendant caused the harm of injuries that he suffered. In determining the question of causation, you should decide whether the defendant's wrongful conduct was a substantial factor in the resulting injury or harm. The defendant's wrongful conduct need not be the only cause, nor the last or nearest cause.[17]

---

[14] *Wilks v. Young*, 897 F.2d 896, 898 (7th Cir. 1990).

[15] See *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (D. Mass 1996).

[16] *Roberts v. Hollocher*, 664 F.2d at 200; *Darbin v. Nourse*, 664 F.2d 1109 (9th Cir. 1981); *Bush v. United States*, 375 F.2d 602, 605 (D.C. Cir. 1967).

[17] *Egervary v. Young*, 366 F.3d 238 (3d Cir. 2004).

**Duty to Prevent Other Officers from Violating Rights.**  Police officers have an affirmative duty to enforce the law and preserve the peace.  This includes stopping other police officers from violating the law.  A police officer may not ignore the duty imposed by his office and fail to stop other officers who illegally punish a third person in his presence.  Thus, if you find that one of the defendant police officers unlawfully conducted an overly intrusive search on the plaintiff, and that another defendant officer did nothing to prevent it, you may hold the second defendant police officer liable as well.[18]

**Liability of Specific Defendants – Joint Tortfeasors.**  In this case there are multiple individual defendants and you must determine whether any or all of them are liable to the plaintiff.  In this analysis, you should determine whether the officers acted jointly with and/or assisted each other.  Where two or more persons act together and cause a wrong to another, they incur joint liability for the acts of each other.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, the law permits the injured party to treat all the people involved in causing the injury jointly, and all are jointly liable to the plaintiff for the total sum of damages.   Under the law, all those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary and all that is required is that there should be a common design or understanding, even if it tacit one.[19]

**Compensatory Damages.**     The fact that the plaintiff's rights are found to have been violated in and of itself entitles him to actual damages.  Therefore, if you decide for the plaintiff on the issue of liability, you must then fix the amount of money damages that will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants was a substantial factor in bringing about.

> Among the elements of injury and harm which you should consider are:
> a.    Any physical harm to the plaintiff during and after the incident, including ill health, physical pain or discomfort.
> b.    Any emotional and mental harm to the plaintiff during and after the incident, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish that plaintiff will, with reasonable certainty, suffer in the future.

**Punitive Damages.**    You must also decide whether the plaintiff is entitled to the award of any punitive damages.  The function of punitive damages is to punish the defendants for malicious conduct and to deter similar conduct by others.  Whether you decide to award any punitive damages should be based on whether you find that the defendants acted willfully, deliberately, maliciously, or with reckless disregard for the plaintiff's

---

[18] *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982); *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1996).
[19] See *Wilson v. Town of Mendon*, 294 F.3d 1(1st Cir. 2002) (recognizing legitimacy of joint tortfeasor liability under § 1983.)

constitutional rights. If you find that they have done one of those things, then you should award punitive damages.

Punitive damages may be awarded even if the violation of plaintiff's rights resulted in only nominal compensatory damages. That is, even if the plaintiff can show no damages or other injury as a result of the defendants' actions, if these actions were deliberate, willful, or made with reckless disregard for plaintiff's rights, punitive damages are appropriate.[20]

**Interest – 42 U.S.C. § 1983.** If you have determined that compensatory damages should be awarded to the plaintiff, you must also decide whether to award interest. This lawsuit was begun years ago, and you may award interest from that time to the present on the sum which you have decided is an appropriate compensatory damage award. Whether you do award interest should depend upon whether you conclude that interest is necessary to compensate the plaintiff fully for any injury suffered, bearing in mind that the plaintiff have not had the use of the damages you award during the time this litigation has been pending.

If you do award interest, the actual sum will be computed by the clerk at the rate provided by the law.[21]

Respectfully Submitted,
Plaintiff Mario Lacy
By his attorneys,


//s// Michael Tumposky
Stephen B. Hrones
BBO # 242860
Jessica Hedges
BBO # 645847
Michael Tumposky
BBO # 660618
Hrones, Garrity & Hedges
Lewis Wharf-Bay 232
Boston, MA 02110-3927
(617) 227-4019

---

[20] *Smith v. Wade*, 461 U.S. 30 (1983); *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 234 (1970) (Brennan, J., concurring); *Cochetti v. Desmond*, 572 F.2d 102, 105-06 (3d Cir. 1978); *Guzman v. Western State Bank*, 540 F.2d 948, 953 (8th Cir. 1976); *Stolberg v. Bd. of Trustees*, 474 F.2d 485 (2d Cir. 1973); *Batista v. Weir*, 340 F.2d 74 (3d Cir. 1965).

[21] *Furtado v. Bishop*, 604 F.2d 80 (1st Cir. 1980).

**CERTIFICATE OF SERVICE**

   I, Michael Tumposky, hereby certify that, on this the 27th day of November, 2006, I have caused to be served a copy of this document, where unable to do so electronically, on all counsel of record in this matter.

                <u>//s// Michael Tumposky</u>
                Michael Tumposky