UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO LACY,<br>    Plaintiff,<br><br>v.<br><br>WILLIAM J. FEENEY,<br>KENNETH<br>HEARNS, JEAN ACLOQUE<br>    Defendants. | C.A No. 04-11492-WGY |

F I L E D
Clerk's Office
USDC, Mass.
Date   11/27/06
By   MP
Deputy Clerk

**PLAINTIFF MARIO LACY'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Now comes the plaintiff, Mario Lacy, in the above-captioned proceeding and respectfully requests that this Honorable Court grant judgment in his favor as to all counts of his Complaint in so far as they allege an unreasonable strip-search. As grounds therefore, plaintiff states that the following facts have not been disputed at trial by the individual defendants: 1) defendant Hearns looked down plaintiff's pants at his bare buttocks; 2) two children ran down the alley right before the search; 3) the search took place while it was light outside; 4) the search took place in the area of Dudley Station Roxbury, a busy urban area; 5) the plaintiff was not under arrest at the time of the search.

### STANDARD OF REVIEW

Pursuant to Rule 50, a motion for judgment as a matter of law is appropriate if there is no basis for the jury to find in favor of the non-moving party:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50.

1

**ARGUMENT**

I. **THE STRIP SEARCH OF PLAINTIFF BY MEANS OF EVIDENCE BAGS IN A PUBLIC ALLEY, WHILE HE WAS NOT UNDER ARREST, AND IN THE PRESENCE OF AT LEAST FIVE POLICE OFFICERS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHTS AS A MATTER OF LAW**

The following facts were undisputed at trial: 1) defendant Hearns looked down plaintiffs pants at his bare buttocks; 2) two children ran down the alley right before the search; 3) the search took place while it was light outside; 4) the search took place in the area of Dudley Station Roxbury, a busy urban area; 5) the plaintiff was not under arrest at the time of the search.

Courts have recognized them as involving an extreme invasion of privacy. *See Bell v. Wolfish*, 441 U.S. 520, 529, 558 (1979) (correctional facilities practice [of visually inspecting underneath the genitals and the anal cavities of male inmates] "instinctively gives us the most pause"); *see also Mary Beth G. v. City of Chicago*, 723 F. 2d 1263 (7th Cir. 1983) (strip searches involving the visual inspection of the anal and genital areas [are] "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission...").

The Supreme Court established the general Fourth Amendment standard for assessing the reasonableness of strip searches in *Bell v. Wolfish*. There the Court held that the test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails" (this standard is commonly referred to as "the *Bell* balancing test"). *Bell*, 441 U.S. at 558-59. However, nearly all of the cases in which the *Bell* balancing test has been employed have involved strip searches that occurred *after arrest* and in

2

the custodial/institutional context. In such custodial/institutional contexts, one factor weighed heavily by courts is institutional security:

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual. [...] [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.

*Id.* at 545-46 (internal citations omitted); *see also Blackburn v. Snow*, 771 F.2d 556 (1st Cir. 1985)(pre-trial detainees – searches after contact visits); *Roberts v. Rhode Island*, 239 F.3d 107, 109-10 (1st Cir. 2001)(both convicted prisoners and pretrial detainees retain constitutional rights despite their incarceration, including basic Fourth Amendment rights against unreasonable searches and seizures); *Ford v. Suffolk County*, 154 F. Supp.2d 131, 140 (D.Mass. 2001)(summary judgment allowed in favor of plaintiffs where pre-arraignment arrestees strip searched by officials at county jail); *United States v. Cofield*, 391 F.3d 334 (1st Cir. 2004)(strip search conducted at precinct after arrest upheld).

In evaluating the reasonableness of the search, the *Bell* Court held that, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. Clearly, here the plaintiff was not being held in a custodial/institutional setting; therefore, the institutional security justifications which diminish privacy rights in the majority of cases are neither present nor relevant.

3

Moreover, the place and manner of the search, which was conducted on the street, in the day time, while plaintiff was not under arrest, using evidence bags, with at least five officers in the area, demonstrated complete disregard for plaintiff's Fourth Amendment Rights. The overwhelming weight of authority suggests that strip searches which are not conducted in private are unconstitutional. Furthermore, to the extent that strip searches are *ever* permissible outside the custodial context, the government must show exigent circumstances and that extreme care was taken to provide the most privacy available in that context. *See Burns v. Loranger*, 905 F.2d 233 (1990)(upholding strip search of woman at residence based upon probable cause and exigent circumstances, the fact that officers had observed commission of felony in police presence and in plaintiff's presence, and that plaintiff had made repeated requests to use the restroom); *see also New Jersey v. T.L.O*, 469 U.S. 325, 382 n. 25 (1985) ("to the extent that deeply intrusive searches are ever reasonable outside the custodial context, it must only be to prevent imminent and serious harm.")

Here, the police believed they had probable cause to arrest the plaintiff. Therefore, they could have arrested him and brought him to the station. Once there, they would have had the opportunity to strip search him if they had a reasonable suspicion that he had drugs or contraband on his person. *See generally Swain v. Spinney*, 117 F.3d 1 (1st Cir. 1997). Even a custodial search, conducted in the privacy of a police station can raise serious Fourth Amendment concerns; however, such a search is less likely to run afoul of the Fourth Amendment. *See Commonwealth v. Thomas*, 429 Mass. 403, 409 n.5 (1999) ( "[t]o preserve the privacy of the person being searched to the utmost extent, police should conduct strip and visual body cavity searches in private rooms whenever possible [...] the searches should always be done where no one, other than the investigating officer or officers, can see the person being

searched.") Here, the defendants did not even bother to take plaintiff to a police vehicle or other indoor location, but pulled open his clothing and looked down his pants in the public alley.[1] No reasonable jury could find that the manner and place of the search in this case did not violate plaintiff's Fourth Amendment rights.

II. **THE SEARCH AND STRIP SEARCH OF PLAINTIFF VIOLATED PLAINTIFF'S STATE CONSTITUTIONAL RIGHTS UNDER M.G.L. C. 12 §11I AS A MATTER OF LAW**

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act ("MCRA") and §1983 are parallel statutes, coextensive with each other. *See Batchelder v. Allied Stores Corp*, 393 Mass. 819, 822-23 (1985); *Canney v. Chelsear*, 925 F. Supp 58, 68 (1st Cir. 1996). Accordingly, the arguments in Sections I and II, *supra*, with respect to plaintiff's claims brought pursuant to §1983 apply with equal force to plaintiff's claims pursuant to the MCRA. Therefore, judgment as a matter of law is certainly appropriate on his claims brought under the MCRA.

## CONCLUSION

The record establishes that the plaintiff must prevail as a matter of law on each element of plaintiff's claims, insofar as they allege an unconstitutional strip search. Therefore, the plaintiff requests that this court allow his motion for judgment as a matter of law.

>Respectfully Submitted,
>The Plaintiff, Mario Lacy
>By his attorney,
>
>//s// Jessica Hedges
>Stephen Hrones
>BBO # 242860
>Jessica Hedges

---

[1] The officers' flagrant disregard of their own department regulations requiring that a strip search not be conducted outside the station and that it be documented in a police report is additional evidence of the unreasonableness of the search.

BBO # 645847
Michael Tumposky
BBO # 660618
Hrones, Garrity & Hedges, LLP
Lewis Wharf, Bay 232
Boston, MA 02110 – 3927
(617) 227 – 4019

## CERTIFICATE OF SERVICE

I, Jessica Hedges, hereby certify that, on this the 25th day of November, 2006, I have caused to be served a copy of this document, where unable to do so electronically, on all counsel of record in this matter.

//s// Jessica Hedges
Jessica Hedges