UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



MARIO LACY,
    Plaintiff.

v.

WILLIAM J. FEENEY, JR.,
KENNETH HEARNS, JEAN
MOSES ACLOQUE and THE CITY
OF BOSTON,
    Defendants.

CIVIL ACTION NO. 04-11492-WGY

## DEFENDANTS, WILLIAM FEENEY, KENNETH HEARNS AND JEAN MOSES ACLOQUE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S EVIDENCE

Now come the Defendants, William Feeney, Kenneth Hearns and Jean Moses Acloque ("Defendants") pursuant to Fed.R.Civ.P. 50(a) and move for judgment as a matter of law in their favor as to the alleged strip search. As grounds therefore Defendants state:

**I.    THERE IS INSUFFICIENT EVIDENCE OF A VIOLATION OF 42 U.S.C. §1983**

    **A.    The Defendants' Version of the Incident Does Not Constitute a Strip Search Under Federal or State Law**

It is Defendants' contention that under the case law of this Circuit a strip search did not take place. In Wood v. Hancock County Sheriff's Department, 354 F.3d 57, 63 (1st Cir. 2003) the court examined the definition of a "strip search". What appears clear from the cases cited was a "strip search" in this Circuit amounts to a visual inspection of a naked body. See Savard v. Rhode Island, 338 F.3d 23, 25 (1st Cir 2003); see also Blackburn v. Snow, 771 F.2d 556, 561 n.3(1st Cir. 1985)( "strip search," though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities) and Roberts v. Rhode

1

Island, 239 F.3d 107,108, n.1 (1st Cir. 2001). Something less than full nudity, as is the case at bar, has not been addressed by this Circuit. See Wood, 354 F.3d at 63, n.10. The facts presented show that there was less than full nudity – Plaintiff was never commanded to nor did he ever remove his clothing to expose his naked body. Furthermore, any incidental viewing or observation of private body parts is not a strip search. See id. at 65. A critical question is whether viewing the naked body was an objective of the search rather than an unavoidable and incidental by-product. See id. For example, momentary exposure as an inmate walks from behind a disrobing screen to a shower naked in order for his clothes to be searched by prison officials is not a strip search. See id. The facts in this case do not approach this incidental viewing of a completely nude body. There has been no evidence that Plaintiff was ordered to remove his clothing by Defendants. This search may be characterized as a "minimum exposure search." See Ciulla v. Rigny, 89 F.Supp.2d 97 (D.Mass. 2000).

In Commonwealth v. Prophete, 443 Mass. 548, 557 (2005), the Supreme Judicial Court ("SJC") adopted the implicit definition of a strip search outlined in Commonwealth v. Thomas, 429 Mass. 403 (1999). The SJC stated that a strip search is "one in which a detainee is commanded to remove the last layer of his clothing...." Prophete, at 557. The determination of whether a strip search took place is a legal conclusion that this Court must make. See Prophete, at 557, n10.

However, should this Court determine that a strip search did in fact take place, there was probable cause to do so and the search performed was reasonable.

### B. The Defendants Possessed Probable Cause to Undertake the Search of Plaintiff

Section 1983 "'supplies a private right of action against a person, who, under color of state law, deprives another of rights secured by the Constitution or by federal law.'" Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 57 (1st Cir. 2002)(quoting Evans v. Avery, 100 F.3d 1033,

2

1036 (1st Cir. 1996)). Here it has been undisputed that Defendant Hearns was acting under color of state law.

Under federal law, the search performed by Hearns on Plaintiff was based on reasonable suspicion. In Swain v. Spinney, 117 F.3d 1, 5 (1st Cir. 1997), the Court held that a strip search is justified and permitted by "reasonable suspicion" that the person is concealing drugs and/or weapons on their person. "Reasonable suspicion" is something more than a mere "hunch," Terry v. Ohio, 392 U.S. 1, 22 (1967), but something weaker than probable cause. See Alabama v. White, 496 U.S. 325, 330 (1990). At a minimum, the reasonable suspicion standard requires that the decision be based on articulable factual information bearing at least some indicia of reliability. See e.g., Alabama v. White, 496 U.S. 325, 330 (1990); United States v. Sokolow, 490 U.S. 1 (1989). Based on the totality of the circumstances, Hearns had sufficient reasonable suspicion that the Plaintiff was concealing drugs on his person. Thus, the search of the Plaintiff was justified and not a violation of his federal constitutional rights.

The officers received reliable information that Plaintiff was in the Dudley Triangle Area of Roxbury selling heroin. Dudley Triangle is a location known for its infestation of drug dealers and Plaintiff is known to Defendant Hearns as a drug dealer who operates in the area. Defendant Acloque initiated a purchase of heroin from Plaintiff through a reliable confidential informant to establish that Plaintiff was indeed selling heroin that day. During this sale, Plaintiff was observed going to a dumpster located in the rear of a Citizens Bank in Dudley. Plaintiff was observed entering the dumpster, headfirst, apparently retrieving an item and then returning to the confidential informant at which time he gave the confidential informant two packets of heroin. At that point there was probable cause to arrest Plaintiff for the sale of controlled substance, Class A. This was conceded by the Plaintiff. Defendants continued their surveillance of

Plaintiff's activities. At some point thereafter a black female approached Plaintiff. She was observed passing what was believed to be U.S. currency to Plaintiff, which he placed in his sock. Twenty dollars was subsequently retrieved from Plaintiff's person. Plaintiff then left the black female and returned, down Marvin Street, to the dumpster, where he was observed again by officers of the drug control unit, to climb headfirst into the dumpster and apparently retrieve something. Plaintiff then proceeded back along Marvin Street at which point contact was initiated by the officers of the drug control unit. There was reasonable suspicion to believe that Plaintiff was returning to the black female with contraband, to complete the transaction. Furthermore, while Plaintiff was with the police officers, including Defendant Hearns, the black female approached the group and demanded of the Plaintiff, either her twenty dollars back or her "two bags". Plaintiff testified that he told Officer Seoane that when he saw the police officers approaching he swallowed a bag. The fact that the black female stated she had given Plaintiff twenty dollars for two bags meant, that he would still be in possession of one bag. Such an admission, with the other observations of the Plaintiff's actions all combined to give the police reasonable suspicion to search Plaintiff for contraband. All of these facts were known to the officers prior to the search of Plaintiff. In addition to these facts, there was evidence that several of the police officers were involved in the arrest of Plaintiff for possession of class A narcotics approximately two weeks prior.

In Defendant Hearns' professional experience it is known that drug dealers often conceal narcotics in their under shorts. Plaintiff was behaving in a nervous manner; his movements were evocative of an individual who had been brought into the police station four weeks prior. Despite being frisked, this individual secreted a loaded .38 caliber gun in his under shorts.[1] Defendant Hearns received permission from his supervisor, Defendant Feeney, to search

---

[1] U.S. v. Cofield, 391 F.3d 334 (1st Cir. 2004).

4

Plaintiff. Plaintiff did not remove any of his clothes. Plaintiff testified he was taken to a location between two buildings that could not be seen from the street. In addition to this, Plaintiff was searched by an officer of the same sex. The search performed by Officer Hearns involved Officer Hearns pulling the back of Plaintiff's sweatpants and undershorts away from his body in a manner akin to checking a baby's diaper. The search did not exceed reasonable bounds nor was it performed in a needlessly humiliating fashion or with improper motivation. See Roberts v. Rhode Island, 239 F.3d 107, 113 (1st Cir. 2001); Swain, 117 F.3d at 8. Plaintiff was not required to expose himself to members of the opposite sex.

    C.    **The Search of The Plaintiff Was Reasonable**

The evidence presented, in the light most favorable to the Plaintiff, suggests that the search was reasonable. The Fourth Amendment prohibits only "unreasonable" searches. The Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979) stated that the test of reasonableness under the Fourth Amendment is incapable of precise definition or mechanical application. Bell v. Wolfish, 441 U.S. at 559. Each case requires a balancing of the need for the search against the invasion of personal rights the search entails. See id.

Furthermore, the search was reasonable in light of the exigent circumstances. Based on their lengthy observations of Plaintiff, Hearns believed that the Plaintiff was concealing contraband on his person. With probable cause to believe the concealment of drugs on his person, the police are permitted to search the Plaintiff, without a warrant if there was "such a compelling necessity of immediate action as [would] not brook the delay of obtaining a warrant." Burns v. Loranger, 907 F.2d 233, 237 (1st Cir. 1990) citing U.S. v. Adams, 621 F.2d 41, 44 (1st Cir. 1980). The heroin being sold by the Plaintiff was contained in small packets – packets that could be easily disposed of by the Plaintiff, should the officers have left the Plaintiff to his own

5

devices while they obtained a warrant. The fact that the search took place in an alcove on Marvin Street should not convert a legitimate search, based on reasonable suspicion, to one in derogation of the Fourth Amendment. Also, "the fact that the search precedes a formal arrest is not important, as long as probable cause [to arrest] existed independent of the results of the search." Commonwealth v. Brillante, 399 Mass. 152, 154-155 n5 (1987)(citations omitted).

The Supreme Court has held that "procedure by way of a warrant is preferred, although in a wide range of diverse situations we have recognized *flexible, common-sense exceptions* to this requirement." Texas v. Brown, 460 U.S. 730, 735 (1983)(emphasis added). Such exceptions include those where evidence may be destroyed.

## II. THERE IS INSUFFICIENT EVIDENCE OF A VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT M.G.L. c.12 §11I

Plaintiff has alleged violations of the Massachusetts Civil Rights Act ("MCRA") against Defendant Hearns. The Massachusetts Civil Rights Act provides for a private right of action for interference with individual rights "secured by the [C]onstitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth . . . as described in section 11H." The Massachusetts Declaration of Rights, article 14, gives every person the right to be free from "unreasonable searches." The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I, provides a private right of action for persons who are deprived of rights protected by either federal or state law. Taking the facts in the light most favorable to the Plaintiff, the Plaintiff was not subjected to a strip search under Massachusetts law.

In order to state a claim pursuant to the Massachusetts Civil Rights Statute, a plaintiff must also allege the deprivation of his rights by threats, intimidation or coercion. See Mass. Gen. L. ch. 12, § 11; Hathaway v. Stone, 687 F. Supp. 708, 711 (D. Mass. 1988); Bell v. Mazza, 394 Mass. 176, 182 (1985) (noting that the state legislature explicitly limited the remedy

6

provided by § 11I to situations where the derogation of rights occurs by threats, intimidation, or coercion).

There has been insufficient evidence to show that Defendant Hearns violated the Plaintiff's constitutional rights by threats, intimidation or coercion. A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act. Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989).

The standard applicable to strip searches in Massachusetts was established in Commonwealth v. Thomas, 429 Mass. 403 (1999). The determination of whether a strip search took place is a legal conclusion that this Court must make. See Commonwealth v. Prophete, 443 Mass. 548, 557 n10 (2005). In Thomas, the defendant had been arrested for a narcotics violation in the immediate aftermath of an undercover police officer's purchase of cocaine. Thomas, at 404-405. He was booked and then strip searched for contraband and weapons. See id. at 405. As he was removing his clothing, he retrieved what appeared to be a bag of crack cocaine from his buttocks. See id. Police then conducted a visual body cavity search and discovered more drugs. Id. at 405.

On appeal, Thomas maintained that the strip search was unreasonable and, citing Rodriques v. Furtado, 410 Mass. 878, 888 (1999), argued that nothing less than "a strong showing of particularized need supported by a high degree of probable cause" would justify either a strip or a visual body cavity search. See Thomas, at 408. The Supreme Judicial Court disagreed. See id. In Rodriques, the court said, involved a manual body cavity search, something far more intrusive than the kinds of searches Thomas experienced. Commonwealth v. Thomas, 429 Mass. at 408. Nevertheless, the Court said, strip searches and visual body cavity searches were far more seriously invasive than searches conducted by manually probing

someone who was fully clothed. Id. at 408-409 & n.5. The court thus rejected decisions holding that such searches, like searches through outer garments, were permissible if officers had a reasonable suspicion to conduct them, and held that probable cause for such searches was necessary. See, e.g., Swain, 117 F.3d at 5.

In Commonwealth v. Prophete, the Supreme Judicial Court adopted the implicit definition of a strip search outlined in Thomas. The SJC stated that a strip search is "one in which a detainee is commanded to remove the last layer of his clothing...." Prophete, at 557. No clothing was removed. In this case, the evidence presented by the facts and circumstances within Defendant's knowledge was enough to warrant a prudent person in believing that he would find contraband, or the fruits or instrumentalities of criminal activity and thus have probable cause to strip search Plaintiff. See e.g., Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Thus, the search of the Plaintiff was based on probable cause and not a violation of his state constitutional rights.

### III. ALL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT WAS OBJECTIVELY REASONABLE IN LIGHT OF CLEARLY ESTABLISHED LAW

Even if this Court were to find that the Plaintiff's federal constitutional rights or state constitutional rights were violated by a wrongful strip search, his claims must be analyzed in light of the qualified immunity enjoyed by police officers. Section 1983 and the MCRA employ the same qualified immunity standard.[2] Duarte v. Healy, 405 Mass. 43 (1989). Pursuant to the doctrine of qualified immunity, police are normally shielded from liability for civil damages

---

[2] This section will analyze whether Defendants are entitled to qualified immunity with respect to the Plaintiff's MCRA claims. §1983 and the MCRA are coextensive, and the requisite standard to perform a strip search in Massachusetts is probable cause. Thus for the purposes of this analysis if a defendant is entitled to qualified immunity under the MCRA, he will be entitled to qualified immunity under §1983.

8

insofar as their conduct did not violate clearly established rights of which a reasonable person would have known. Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A sequential analysis is used to determine whether a defendant violated clearly established rights of which a reasonable person would have known. See Saucier v. Katz, 533 U.S. 194, 201-06 (2001). The First Circuit has construed that analysis to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). Qualified immunity extends "so broadly that all but the plainly incompetent or those who knowingly violate the law'" enjoy its protection. Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995)(quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

The ultimate question of whether a defendant is entitled, on a given set of facts, to the protection of qualified immunity is a question of law for a court to decide. See Jarrett, 309 F.3d at 61 (quoting Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir. 2002)). The U.S. Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Saucier, 533 U.S. at 201 (2001) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). The privilege is an immunity from suit rather than a mere defense to liability and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Saucier, 533 U.S. at 200-201 (quoting Mitchell, 472 U.S. at 526).

Plaintiff asserts that the strip search was violative of his Fourth Amendment rights under the Constitution and the MCRA. Thus, assuming *arguendo* that Plaintiff's allegations establish a violation of Massachusetts law, then the next step is to determine whether the right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 206. In this case it means that this Court must decide whether it was clearly established law that the police needed at least probable cause before conducting a strip search.

The definition of a strip search in the First Circuit has never included the mere rearrangement of clothes without the removal of such. If the Court finds a strip search was committed, the officers are entitled to qualified immunity.

As discussed *supra*, the case law makes it clear that existing cases gave Defendants plenty of fair warning that prior to July 14, 2001, probable cause was needed in order to subject people to strip searches. Comm v. Thomas, 429 Mass. 403 (1999). In Thomas the Court acknowledged that although strip searches impinge seriously on a person's privacy, such searches may be necessary in certain cases. See id. at 409 n.5.

Defendants are entitled to qualified immunity if an objectively reasonable police officer in Defendants' position would believe that his conduct was lawful in light of clearly established law. See Swain, 117 F.3d at 9. This is a legal question that requires an examination of the information possessed by the defendant officials. See Kelly v. LaForce, 288 F.3d 1, 7 (1st Cir. 2002); Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999). The determination of reasonableness is made by examining the evidence presented that Defendants had probable cause to believe that the Plaintiff was concealing contraband. See Savard v. Rhode Island, 320 F.3d 34, (1st Cir. 2003). The evidence presented at trial establishes the facts known to Defendants at the time of the search of the Plaintiff, as discussed *supra*. Furthermore, the Plaintiff conceded

that the officers had probable cause to arrest the plaintiff at the time of the encounter. Those facts establish probable cause. "Probable cause is a relatively low threshold, defined as 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [and that] were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" White v. Marblehead, 989 F.Supp. 345, 348 (D.Mass. 1997)(quoting Rivera, 979 F.2d at 263). When an arrest, for example, is challenged on the basis of lack of probable cause, the arrest is deemed objectively reasonable unless there *clearly* was *no* probable cause at the time the arrest was made." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999)(quoting Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993)(emphasis added).

    Defendants acts were reasonable in the sense that they acted on probable cause and exigent circumstances on the search for the heroin. The circumstances were exigent in accepted sense of that word: there was a real "likelihood of imminent loss of the evidence," Comm v. Tarver, 369 Mass. 302, 308 (1975). If Defendants had adjourned to get an arrest warrant, any heroin or other controlled substances on the person of Plaintiff would, in all likelihood, have vanished before execution of the warrant. The Supreme Court has said "that procedure by way of warrant is preferred, although in a wide rage of situations we have recognized flexible, commonsense exceptions to this requirement." Texas v. Brown, 460 U.S. 730, 735-736 (1983). Furthermore, the Court said in Roaden v. Kentucky, 413 U.S. 496, 505(1973) that "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation."

    Plaintiff contends that the officers were not in such a dilemma, that having probable cause to arrest him for the sale of heroin to the confidential informant, Defendants could have

11

simply placed Plaintiff under arrest and taken him to the station and search him there to afford him privacy. This however counsels a greater intrusion on the Plaintiff's liberty, a formal arrest, to justify the lesser intrusion of a search, and thus distorts the intended protections of the Fourth Amendment into an instrument of oppression. Comm v. Skea, 18 Mass.App.Ct. 685, 694 (1984)(quoting see 2 *Lafave, Search and Seizure*, §5.4, at 344 (1978), quoting People v. Simon, 45 Cal.2d 645, 648 (1955)(quoted in 2 LaFave, Search and Seizure § 5.34, at 338 (1978), Traynor, J.)

In Cupp v. Murphy, 412 U.S. 291 (1973), where police had probable cause to believe Murphy had strangled his wife, their act of scraping his fingernails was held proper despite the fact that they did not arrest him for nearly another month. The police were held "justified…in subjecting [Murphy] to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails…." Cupp v. Murphy, 412 U.S. at 296. The Massachusetts Court of Appeals reads Cupp v. Murphy, to authorize a search of the person, without arrest for evidence which the police have probable cause to believe is on his person, so long as the search does not exceed in scope that which is justified by probable cause and necessitated by exigency. See Comm. v. Skea,, 18 Mass.App.Ct. at 697. Although the evidence in Cupp was highly evanescent, it is no less so than the evidence in the case at bar that Defendant Hearns could have recovered from Plaintiff's person which he could have disposed of if Hearns had waited to obtain a warrant. 2 *Lafave*, §5.4 at 341.

In Comm v. Skea, the Court of Appeals acknowledged that the cases where searches of or seizures from persons have been justified on the basis of probable cause and exigent circumstances are few because more than likely the great majority of cases the police either find nothing or effect an arrest. See Comm v. Skea, at 699-700. The Court in Comm v. Skea, held

12

that the search of defendant, who was not arrested at the time was justified by probable cause to believe he carried marihuana or other controlled substances, coupled with exigent circumstances, inherent in the fact that any contraband defendant carried would be unavailable to the police unless it were then taken into their control. See id. at 700.

The Plaintiff cannot show that it is *absolutely* clear that *no* probable cause existed. Qualified immunity must not be denied. See Sheehy v. Town of Plymouth, 191 F.3d at 19(quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)). In fact the Plaintiff has conceded that probable cause did exist. "This type of discretionary judgment call, made routinely by peace officers, must be protected from the chilling effect of personal liability." Vargas –Badillo v. Diaz-Torres, 114 F.3d 3, 7 (1st Cir. 1997)(granting qualified immunity in case where evidence for arrest was "not very strong").

Defendants are therefore entitled to qualified immunity.

## IV.  CONCLUSION

Defendants are entitled to judgment as a matter of law. Plaintiff Mario Lacy's constitutional rights and state rights were not violated and finally the Defendants are entitled to qualified immunity.

Respectfully submitted,

DEFENDANTS, WILLIAM FEENEY, KENNETH HEARNS, JEAN MOSES ACLOQUE

By their attorneys,
William F. Sinnott
Corporation Counsel

*/s/ Karen A. Glasgow*
Karen A. Glasgow   BBO# 648688
Susan M. Weise, BBO # 545455
Assistant Corporation Counsel
City of Boston Law Department

Room 615, Boston City Hall
Boston, Massachusetts 02201
(617) 635-3238

14